AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

FILED
01 September 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

United States of America
v.
BRIAN MULLIGAN

*Defendant(s)*

Case No.3:26-mj-71172 MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 20, 2026 in the county of San Francisco in the Northern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) | Possession and/or access with intent to view a visual depiction of a minor engaged in sexually explicit conduct<br><br>Imprisonment: 20 years; Fine: $250,000; Supervised Release: 5 years to life; Special Assessment: $100 per felony count; JVTA Spec. Assess.: $5,000; CSAM Assessment: $17,000; Restitution (min.): $3,000; Forfeiture; Sex offender registration |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

/s/ Michael Nicholas
*Complainant's signature*

Michael Nicholas, FBI Special Agent
*Printed name and title*

Approved as to form /s/ Christine Chen
AUSA Christine Chen

Sworn to before me by telephone.

Date: 09/01/2026

*Judge's signature*

City and state: San Francisco, CA

Hon. Lisa J. Cisneros, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Michael Nicholas, Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application under Rules 3, 4, and 4.1 of the Federal Rules of Criminal Procedure for a criminal complaint and warrant authorizing the arrest of BRIAN MULLIGAN ("MULLIGAN") for possession of visual depictions of minors engaged in sexually explicit conduct—specifically including the below-described visual depictions—in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (possession and/or access with intent to view a visual depiction of a minor engaged in sexually explicit conduct) ("**TARGET OFFENSE**") on or about May 20, 2026, in the Northern District of California.

**AFFIANT BACKGROUND**

2. I am a Special Agent with the FBI and have been since January 2016. I received approximately 20 weeks of training at the FBI Academy in Quantico, Virginia. During that time, I received training in various aspects of criminal investigation, including interviewing, legal procedure and process, source management, investigative technology, firearms and tactical training, evidence collection, and defensive tactics. I am currently assigned to the Violent Crimes Against Children squad of the FBI's San Francisco Field Division and have been since 2018. I am responsible for investigating, among other things, kidnappings, human trafficking, child exploitation, and child pornography offenses, including the production, distribution, receipt, and possession of child pornography. I have received on-the-job training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in multiple forms of media, including computer media. I have been involved directly with dozens, if not hundreds, of investigations involving crimes against children. Through that work, I have participated in the execution of numerous federal search warrants conducted by the FBI and in the search and

seizure of computers and of digital evidence, and the collection of physical DNA from subjects of investigations related to violations of various crimes against children. My time on the Violent Crimes Against Children squad included a 16-month temporary assignment to the Crimes Against Children & Human Trafficking Unit at FBI Headquarters, where I was a Supervisory Special Agent, responsible for program management of multiple FBI field offices' Crimes Against Children squads. My duties included oversight of their Crimes Against Children programs, consulting and advising on investigations, managing resources devoted to the Crimes Against Children programs, and building, coordinating and providing training for Crimes Against Children agents.

3. The facts set forth in this affidavit are based on my own personal observations, my training and experience, information from records and databases, information received from other law enforcement officers and witnesses, and knowledge obtained from other individuals during my participation in this investigation.

4. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that MULLIGAN has committed the **TARGET OFFENSE**. When conversations and events are referenced, they are referred to in substance and in relevant part unless otherwise indicated, and dates are approximate. This affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

## APPLICABLE STATUTES

5. This investigation concerns an alleged violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

a. Pursuant to Title 18 U.S.C. § 2252(a)(4)(B) and (b)(2), it is unlawful for any person to knowingly possess or access with intent to view any material that contains any visual depiction of a minor engaging in sexually explicit conduct that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by

computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. Such a violation is punishable by not more than ten years' imprisonment.

## DEFINITIONS

6. The following definitions apply to this Affidavit and the attachments hereto:

a. "Child Pornography," as used herein, is defined in 18 U.S.C. § 2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. Child Pornography is often referred to as Child Sexual Abuse Material ("CSAM") by those who investigate child exploitation offenses.

b. "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1) as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

c. "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including,

but not limited to, physical keys and locks).

d. "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

e. The "internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

f. "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the internet. ISPs provide a range of functions for their customers including access to the internet, web hosting, email, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the internet including telephone based dial-up, broadband based access via digital subscriber line ("DSL") or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "email address," an email mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an ISP over a telephone line, through a cable system or via satellite, and can access the internet by using his or her account name and personal password.

g. "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP

address which is used each time the computer accesses the internet. IP addresses are also used by computer servers, including web servers, to communicate with other computers.

h. “Minor” means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

i. “Sexually explicit conduct” means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(2).

j. “Website” consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (“HTML”) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (“HTTP”).

## <u>FACTS SUPPORTING PROBABLE CAUSE</u>

<u>*MULLIGAN’s Apple Account*</u>

7. On May 20, 2026, the Honorable Thomas S. Hixson, U.S. Magistrate Judge for the U.S. District Court for the Northern District of California, issued four search warrants for 17 electronic accounts associated with MULLIGAN. *See* Case Nos. 3:26-mj-70713 TSH, 3:26-mj-70714-TSH, 3:26-mj-70715-TSH, and 3:26-mj-70716-TSH. Review, which is still ongoing, has uncovered multiple CSAM images and videos in these accounts.

8. Another FBI agent received and reviewed search warrant returns for MULLIGAN’s suspected Apple iCloud account.

9. Subscriber information for the Apple account confirmed that it belonged to “Brian Mulligan” with an address in Santa Clara, California, and associated with a phone number ending in -1921. Although investigation indicated that MULLIGAN has been generally unhoused in the Bay Area of California and staying in different hotels in the Bay Area in recent

years, this address associated with the Apple account matches the address on MULLIGAN's California driver's license.

10. In summary, law enforcement identified 645 videos and 1 image of apparent CSAM during the review of this iCloud account. One hundred and sixteen (116) of the videos appeared to involve CSAM of babies and/or toddlers (0-3 years of age). The suspected CSAM files include:

d. An 8-second video of a 0–1-year-old girl being vaginally penetrated by adult penis. The adult is holding the baby girl's ankles around the girl's shoulders, while penetrating the baby girl's vagina. The baby girl appears to have fabric topped with tape or plastic over the baby girl's mouth.

e. A 31-second video of an unclothed 0–3 year old boy who appears limp and unmoving. An adult female is holding the boy with one hand underneath the boy and using her other hand's fingers to open the boy's buttock.

11. There are also multiple iMessages in the account from June 29, 2019, through May 19, 2026, sent from the phone number ending in -1921 with some of the messages sharing links to Zoom meetings from "SF Tweakwood Mac," *e.g.*, "SF Tweakwood Mac is inviting you to a scheduled Zoom meeting" with a link and access information. One iMessage stated in part, "Hey there it's Brian aka SF Tweakwood Mac from zoom."

12. There are also WhatsApp messages saved in the iCloud account. A message sent from the phone number ending in -1921 on December 18, 2025, stated, "And then the money I make from zoom and or when I finally get another job after fixing my teeth would all be bonus money."

13. In addition, the iCloud account included what appears to be a clip of a Zoom meeting where a user logs in and sees highlighted green text stating "You are viewing SF Tweakwood Mac's screen." During the clip, a video begins playing within the Zoom meeting showing an adult penis being inserted into the genitals of a 0–3-year-old child (sex unknown). The screen showed "Friday 3/10/2023 8:06 p.m." One of the users of the Zoom meeting has the handle "SF Tweakwood Mac" and apparently had his camera on. The image of "SF Tweakwood Mac" matches the appearance of MULLIGAN as seen in his California Driver's license.

*Encountering MULLIGAN at a Different CSAM Target's Residence*

14. On August 25, 2026, the Honorable Thomas S. Hixson, U.S. Magistrate Judge for the U.S. District Court for the Northern District of California, issued a search warrant for a residence in San Francisco, California, in relation to an investigation concerning a different

individual believed to be involved in committing CSAM offenses. *See* Case No. 3:26-mj-71136 TSH.

15. On September 1, 2026, law enforcement executed this search warrant and discovered that MULLIGAN was also a resident of this address.

16. This unit is a two-bedroom residence. On September 1, 2026, MULLIGAN briefly spoke with agents before requesting a lawyer. Prior to requesting an attorney, he indicated that he has lived at this address for about one and a half months and that his room is the bedroom at the far end of the hallway past the bathroom. He admitted to having been on Zoom and having watched CSAM on Zoom using his laptop. He also indicated that the phone number ending in -1921 was his phone number. As mentioned previously, this phone number is associated with the above-described Apple account containing CSAM.

17. Law enforcement discovered 1 digital camera, 3 cellphones, and 2 laptops in MULLIGAN's bedroom. They also observed suspected drugs, potentially including fentanyl.

18. Also on September 1, 2026, law enforcement obtained a search warrant for his room (docket number pending) and seized the above-mentioned devices. Review of these devices is ongoing.

19. MULLIGAN is currently in custody of local authorities on a warrant for misdemeanor embezzlement charges.

## CONCLUSION

20. On the basis of the information summarized above, there is probable cause to believe that on or about May 20, 2026, in the Northern District of California, MULLIGAN knowingly possessed visual depictions of minors engaged in sexually explicit conduct, including minors under the age of 12, that had been mailed, shipped, or transported using any means or facility of interstate commerce, or in or affecting interstate commerce, or produced using material that had been mailed, shipped, or transported using any means or facility of interstate commerce, or in or affecting interstate commerce, by any means including by computer, in

violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

*/s/ Michael Nicholas*
MICHAEL NICHOLAS
FBI Special Agent

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 1st day of September 2026. This complaint is to be filed under seal.

HONORABLE LISA J. CISNEROS
United States Magistrate Judge